JEFFRIES et al. v. DE HART.

(District Court, E. D. Pennsylvania. September 11, 1899.)

MASTER AND SERVANT—DEATH OF STEVEDORE—LIABILITY OF OWNERS OF SHIP.
  Where a ship was not bound to furnish tackle to hold up a chute used
  by contractors in loading the vessel with grain, and that used was rigged
  up by the stevedores employed by the contractors, the mere fact that the
  mate in charge did not object to the manner in which it was secured
  would not render the owners liable for the death of a stevedore, caused
  by the breaking of such tackle and the falling of the chute, the mate
  having no better means than others of judging of its safety.[1]

In Admiralty.

William Colton and J. Warren Coulston, for libelants.
Convers & Kirlin and Henry R. Edmunds, for respondent.

McPHERSON, District Judge. This is an action in personam
against the owner of the British steamship Henriette H. to recover
damages for the death of Thomas Jeffries, the husband and father of
the libelants, who was killed upon the vessel while at work as a steve-
dore. The injury was done under the following circumstances: On
December 2, 1896, the steamship arrived at Elevator C, Locust Point,
Baltimore, and took on board a small quantity of grain. The next
day the work of loading was resumed, and continued until noon,
when the vessel was moved to an elevator at Canton. On December
4th she returned to Elevator C about 8 o'clock in the morning, and
began to receive oats in bulk at No. 2 hatch. The operation was con-
ducted as follows: A heavy wooden chute, about 30 feet long,
made of 1½ or 2 inch planking, lined with sheet iron, and attached to
the elevator by an iron gooseneck, ran to the hatch, and was there
suspended over the opening by tackle rigged to the foremast of the
vessel. "This tackle [repeating the libelants' description] consisted
of a chain which was made fast to the cringle or eye of the sail, the
sail being furled to the foremast, and thence passed along the gaff on
the foremast almost to the end of the gaff, where it passed through an
opening in the gaff, called a 'score,' over a sheave, and thence back
to the foremast, passing through a block, and thence downward to a
point near the deck of the vessel, where a block and tackle were at-
tached to it, and made fast to a ring or bolt in the deck of the vessel."
The respondent's description adds some further details: "This is a

---

[1] As to liability of owners of vessels for injuries to servants generally, see
Transport Co. v. Coneys, 28 C. C. A. 388, 82 Fed. 177; Jensen v. The Joseph
B. Thomas (D. C.) 81 Fed. 578; Baccus v. The Manhanset (D. C.) 69 Fed. 471;
Ferguson v. The Terrier (D. C.) 73 Fed. 265; The Elton, 31 C. C. A. 496, 83
Fed. 519; The Joseph John, 30 C. C. A. 199, 86 Fed. 471; The Joseph B.
Thomas, 30 C. C. A. 333, 86 Fed. 658; The City of Norfolk (D. C.) 55 Fed.
98; Boden v. Demwolf (D. C.) 56 Fed. 846; Steel v. McNeil, 8 C. C. A. 512,
60 Fed. 105; Unitus v. The Dresden (D. C.) 62 Fed. 438; Oien v. The Antonio
Zambrana (D. C.) 89 Fed. 60; McGough v. Ropner (D. C.) 87 Fed. 534; The
Anaces, Id. 565; Grasso v. The Lisnacrieve, Id. 570; The Kensington (D. C.)
91 Fed. 681; The Magdaline, Id. 798.

permanent tackle, used in hauling out the fore trysail, and is arranged as follows:   Where the head rope of the sail (which follows the line of the gaff) and the leech rope join, a cringle or eye is made, which consists of a round iron thimble or ring, around which the rope is spliced.   To this cringle there is attached, by means of a shackle and bolt, a chain.   The tackle then passes through a sheave in the end of the gaff; thence through a block on the foremast down to the deck.   The sail, not being in use at the time, was, of course, furled in to the mast.   The weight upon the outhaul tackle, to which the chute was suspended, was supported, therefore, by the strength of its place of final attachment, to wit, the cringle in the head of the sail." About 2 o'clock in the afternoon the tackle suddenly gave way, the chute (which weighed more than 500 pounds) fell several feet, and struck the decedent, who was trimming the grain as it fell into the hold, killing him almost instantly.

What happened to the tackle is in dispute.   The libelants contend that, although the shackle should have been fastened to the cringle by an iron pin or bolt, it was improperly fastened by marline or spun yarn, and that the marline broke under the strain; the result being that the shackle slid along the gaff until it stopped at the score (through which it could not pass), and that the loosening of the tackle occasioned by this sudden sliding caused the chute to drop.   The negligence complained of is the use of marline, instead of an iron bolt, to fasten the shackle to the cringle.   This, it is argued, was a plainly inadequate fastening, known by the master to be in use, and was, therefore, an obviously defective appliance, furnished by him to the laborers that were employed to load the cargo.   If these two averments of fact were true, the defendant's negligence would be established, but I do not think that either averment is proved.   In my opinion, the testimony shows that the shackle was properly fastened by an iron bolt, and that the injury was caused by the breaking of the ropes around the head of the sail, and the tearing out of the corner to which the cringle was attached.

Moreover, even if these facts would support the inference that the appliance was defective,—a point I do not decide,—I am also of opinion that the appliance was not furnished to the stevedores by the ship, but was chosen by the stevedores themselves without asking any questions of the ship's officers, and, further, was chosen when a tackle obviously safe and better fitted to suspend the chute was rigged to the same mast, and was almost as conveniently at the stevedores' disposal.   I think it is true that on the evening of December 2d the foreman of the stevedores, in reply to a question by the mate (who had command of the vessel in the captain's absence) when the work of loading would begin on the following morning, named an hour, and added a request to the mate to have steam on the winches, and gear up.   But there is no evidence whatever, except the bare fact that the mate allowed the trysail tackle to be used without objection, that this particular gear, or any other gear, was furnished by the ship in compliance with the foreman's request.   In this instance the vessel was not bound thus to comply.   She was being loaded under a

contract with the Geo. P. Cronise Company, by whom the foreman, the decedent, and the other laborers were employed; and under the contract the ship was only to furnish "all necessary steam, slings, and rope for falls." The company was to furnish "all other gear," and it was, therefore, their duty to provide the necessary tackle to suspend the chute. To my mind it is clear that the ship did not undertake to furnish it on the morning of December 3d, or afterwards. Upon the morning just named the stevedores came on board, and immediately, without asking for tackle, or to be advised what gear was to be used, unfastened the down haul of the trysail, attached it to the chute, and began to work. Upon the same mast much stronger tackle was attached for the purpose of hoisting a derrick, and if a man had been sent up the mast about 30 feet this tackle could have been unfastened and used without difficulty.

Under these circumstances I do not see upon what ground the libelants can recover. The mere failure of the mate to object to the use of the trysail tackle, even if he believed such tackle to be ordinarily inadequate, was not a breach of legal duty for which the master is liable. The ship was not bound to furnish tackle to suspend the chute, and I see no evidence to warrant the conclusion that the mate had any knowledge that the stevedores did not also possess concerning the strength or weakness of such an appliance. That it was not plainly unfit for the work is apparent from the fact that it had been used during two half days without misadventure, and that it may have broken for some reason that does not clearly appear from the testimony is perhaps a reasonable inference from the fact that it gave way at a time when the strain due to the position of the chute was less than the strain had previously been.

Without further elaboration, my conclusion is that the respondent has not been shown to be at fault. He was not bound to furnish the gear in question, and did not furnish it. If it lacked the necessary strength, neither he nor the mate had such peculiar knowledge of its weakness as imposed upon either a legal duty to object to its use. It was chosen by the decedent's fellow servants for their own convenience, and at their own risk, and liability for the unfortunate accident that followed is therefore not chargeable to the owner of the ship.

The libel must be dismissed, but without costs.